UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               :   ECF CASE
                                      Plaintiff,               :   12 Cr. 125 (JSR)
                                                               :
                   vs.                                         :
                                                               :
DOUG WHITMAN,                                                  :
                                                               :
                                      Defendant.               :
                                                               :
------------------------------------------------------------- X

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOUGLAS WHITMAN'S MOTION PURSUANT TO 28 U.S.C. § 2255

Dennis P. Riordan (*pro hac vice*)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone:  (415) 431-3472
Fax:  (415) 552-2703
dennis@riordan-horgan.com

Alexandra A.E. Shapiro
SHAPIRO ARATO LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
Telephone:  (212) 257-4880
Facsimile:  (212) 202-6417
ashapiro@shapiroarato.com

Theodore Sampsell-Jones (*pro hac vice pending*)
WILLAM MITCHELL COLLEGE OF LAW
875 Summit Ave.
St. Paul, MN 55105
Telephone:  (415) 846-5485
ted.sampselljones@wmitchell.edu

*Attorneys for Douglas Whitman*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION .......................................................................................1

BACKGROUND ..........................................................................................2

ARGUMENT ...............................................................................................3

I.     THE COURT'S INSTRUCTION PERMITTED THE JURY TO
CONVICT MR. WHITMAN ON A LEGAL THEORY THAT IS
INVALID AFTER *NEWMAN*. ..........................................................5

    A.   *Newman* Invalidated the Instruction Given at Trial ....................5

    B.   *Newman* Applies Retroactively on Collateral Review............7

    C.   The Instructional Error Cannot be Deemed Harmless ...............8

        1.   *The Government's Friendship Theory* .......................9

        2.   *Insufficiency and Alternate Grounds* ........................12

II.    THE INDICTMENT WAS DEFICIENT BECAUSE IT FAILED TO
ALLEGE AN ESSENTIAL ELEMENT OF THE OFFENSE ..................15

III.   THERE IS NO JURISDICTIONAL, PROCEDURAL, OR PRUDENTIAL
REASON MR. WHITMAN'S MOTION CANNOT BE GRANTED
IMMEDIATELY. ...............................................................................18

IV.   WERE THE GOVERNMENT TO CONTEND THAT MR. WHITMAN'S
PRIOR COUNSEL PROCEDURALLY DEFAULTED HIS *NEWMAN*
CLAIM, THIS COURT NONETHELESS WOULD BE REQUIRED
TO REACH THE MERITS OF THE CLAIM ON SIXTH AMENDMENT
GROUNDS. ......................................................................................19

CONCLUSION...........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aparicio v. Artuz*,
269 F.3d 78 (2d Cir. 2001) ................................................................................................ 20

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) ........................................................................................................... 16

*Bilzerian v. United States*,
127 F.3d 237 (2d Cir. 1997) ................................................................................................ 8

*Bloomer v. United States*,
162 F.3d 187 (2d Cir. 1998) .............................................................................................. 20

*Bousley v. United States*,
523 U.S. 614 (1998) ......................................................................................................... 7, 8

*Brecht v. Abrahamson*,
507 U.S. 619 (1993) ............................................................................................................. 8

*Chapman v. California*,
386 U.S. 18 (1967) ............................................................................................................... 8

*Cox v. Donnelly*,
387 F.3d 193 (2d Cir. 2004) .............................................................................................. 20

*Davis v. United States*,
417 U.S. 333 (1974) ............................................................................................................. 8

*Dirks v. SEC*,
463 U.S. 646 (1983) ................................................................................................... 5, 7, 18

*Hedgpeth v. Pulido*,
555 U.S. 57 (2008) ............................................................................................................. 13

*Jones v. United States*,
526 U.S. 227 (1999) ........................................................................................................... 16

*Martignoni v. United States*,
No. 10 Civ. 6671 (JFK), 2011 WL 4834217 (S.D.N.Y. Oct. 12, 2011) ............................ 14

*Monsanto v. United States*,
143 F. Supp. 2d 273 (S.D.N.Y. 2001), *aff'd* 348 F.3d 345 (2d Cir. 2003) ........................ 8

*Santana-Madera v. United States*,
    260 F.3d 133 (2d Cir. 2001) ............................................................ 8

*Skilling v. United States*,
    561 U.S. 358 (2010) ..................................................................... 13

*Staples v. United States*,
    511 U.S. 600 (1994) ..................................................................... 15

*Teague v. Lane*,
    489 U.S. 288 (1989) ....................................................................... 7

*United States v. Andrews*,
    681 F.3d 509 (3d Cir. 2012) ......................................................... 13

*United States v. Botti*,
    711 F.3d 299 (2d Cir. 2013) ......................................................... 13

*United States v. Hornsby*,
    666 F.3d 296 (4th Cir. 2012) ................................................... 13, 14

*United States v. Mandanici*,
    205 F.3d 519 (2d Cir. 2000) ........................................................... 8

*United States v. Newman*,
    773 F.3d 438 (2d Cir. 2014) .................................................... passim

*United States v. O'Hagan*,
    521 U.S. 642 (1997) ....................................................................... 5

*United States v. Post*,
    950 F. Supp. 2d 519 (S.D.N.Y. 2013) ..................................... 14, 15

*United States v. Resendiz–Ponce*,
    549 U.S. 102 (2007) ..................................................................... 16

*United States v. Whitman*,
    555 Fed. App'x 98 (2d Cir. 2014) ................................................... 3

*United States v. Whitman*,
    904 F. Supp. 2d 363 (S.D.N.Y. 2012) ............................................. 1

*Whitman v. United States*,
    135 S. Ct. 352 (2014) ..................................................................... 3

*Yates v. United States*,
  354 U.S. 298 (1957).................................................................................................. 13

**Statutes, Rules and Other Authorities**

18 U.S.C. § 1346.......................................................................................................... 13

28 U.S.C. § 2255................................................................................................. 5, 8, 18

28 U.S.C. § 2254............................................................................................................ 8

Federal Rule of Appellate Procedure 35(a) ................................................................. 19

Federal Rule of Appellate Procedure 41(c) ................................................................. 19

## **INTRODUCTION**

Douglas Whitman was convicted on charges of insider trading in 2012. The precise contours of insider trading liability have long been murky in several critical respects. Indeed, as this Court noted after Mr. Whitman's trial, "the prohibition of insider trading in the United States has developed in a somewhat *ad hoc* manner, leaving many unanswered questions," and Mr. Whitman's trial itself "illustrate[d] [this] point." *United States v. Whitman*, 904 F. Supp. 2d 363, 367 (S.D.N.Y. 2012). Throughout the trial proceedings, this Court was required to address numerous questions left unanswered by Supreme Court and Second Circuit case law.

One of the key disputed issues related to the meaning of "personal benefit." It has long been clear that insider trading laws only proscribe trading on information that a corporate insider disclosed in return for some personal benefit, but the meaning of personal benefit was not clearly defined by case law. At Mr. Whitman's trial, this Court accepted the government's position that "just maintaining or furthering a friendship" counts as a "personal benefit" sufficient to trigger liability. The jury was instructed accordingly (Tr. 2952),[1] and the government relied heavily on a friendship theory as its core theory of guilt.

A few months ago, the Second Circuit invalidated that theory. In *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), it rejected the government's expansive view of the scope of insider trading liability. It held that mere benefits of friendship, "particularly of a causal or social nature," are insufficient. *Id.* at 452. Rather, the government must prove a benefit that is "objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." *Id.* Under *Newman*, the theory of guilt that the government pursued

---

[1] "Tr." refers to the transcript of the trial of this matter; "GX" refers to the government's exhibits admitted at trial. Relevant excerpts from the trial transcript are attached as Exhibit 2 to the accompanying declaration of Alexandra A.E. Shapiro ("Shapiro Decl.").

throughout Mr. Whitman's case—and that this Court approved in the jury instructions—is legally invalid.

For almost seven months, Mr. Whitman has been incarcerated at the Federal Correctional Institution in Lompoc, California ("FCI Lompoc"), serving a sentence for a conviction that is based on an impermissible legal theory. *Newman* requires that this Court vacate Mr. Whitman's convictions and order a new trial.

## BACKGROUND

On February 8, 2012, a grand jury charged Mr. Whitman with two counts of conspiracy to commit securities fraud and two counts of securities fraud. (*See* Indictment, No. 12 Cr. 125 (Shapiro Decl. Ex.1), ¶¶ 9-10, 24-25, 29). Count One of the Indictment alleged that Mr. Whitman, Karl Motey, and others conspired to trade in the securities of Marvell Technology Group, Ltd. on the basis of material, non-public information. (Indictment ¶¶ 4-12). The Indictment alleged that certain Marvell employees "tipped" Motey with inside information, and that Motey, in turn, passed that information to Mr. Whitman, making Mr. Whitman a so-called "remote tippee." (Indictment ¶¶ 5-6). The Indictment further alleged that the Marvell insiders disclosed information to Motey "in violation of duties of trust and confidence" and "for personal benefit." (Indictment ¶ 5). The Indictment did not specify what "personal benefit" was allegedly provided to the Marvell insiders, or by whom, or that Mr. Whitman knew of any such benefit.

Count Two of the Indictment alleged that Mr. Whitman, Roomy Khan, and others conspired to trade in the securities of Polycom, Inc. and Google, Inc. on the basis of material, non-public information. (Indictment ¶¶ 13-27). Regarding Polycom, the Indictment alleged that a Polycom insider furnished Khan with inside information, and that Khan (like Motey, functioning as an intermediary) passed that information to Mr. Whitman, a remote tippee. (Indictment ¶¶ 16-18). Regarding Google, the Indictment alleged that an unnamed employee at

an investor relations firm that provided services to Google "tipped" Khan, and Khan passed that information to Mr. Whitman. (Indictment ¶¶ 20-21). Similar to Count One, Count Two also alleged that the Polycom and Google insiders disclosed information to Khan "in violation of duties of trust and confidence" and "for personal benefit." (Indictment ¶¶ 17, 20). Again, however, the Indictment did not specify the "personal benefit" allegedly provided, or by whom, and it did not allege that Mr. Whitman, or even Khan, knew about such a benefit.

Counts Three and Four of the Indictment contained substantive securities fraud charges based on the same factual allegations underlying the conspiracy charge in Count Two. In Count Three, the Indictment alleged that Mr. Whitman's January 2006 trades in Polycom amounted to insider trading (Indictment ¶ 29), and in Count Four, the Indictment alleged that his July 2007 trades in Google constituted insider trading (Indictment ¶ 29).

After a three-week trial before this Court in August 2012, Mr. Whitman was convicted on all counts, and was sentenced on January 24, 2013, to 24 months' imprisonment on each count, to be served concurrently. Mr. Whitman timely appealed, and his convictions were affirmed on February 19, 2014. *United States v. Whitman*, 555 Fed. App'x 98 (2d Cir. 2014). Mr. Whitman filed a petition for writ of certiorari, which was denied on November 10, 2014, although two Justices noted troubling aspects of the case. *See Whitman v. United States*, 135 S. Ct. 352 (2014) (statement of Scalia, J., respecting denial of certiorari). On September 3, 2014, Mr. Whitman surrendered at FCI Lompoc, and has been incarcerated ever since.

## ARGUMENT

The Second Circuit's recent decision in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), invalidated Mr. Whitman's conviction. The government's core theory of guilt, from indictment to closing arguments to appeal, was that Mr. Whitman had traded on information that corporate insiders had disclosed in order to maintain personal and professional relationships with

friends.  Under *Newman*, however, disclosures made in order to further friendships do not trigger insider trading liability.  *Newman* clarified and narrowed the meaning of "personal benefit."  It expressly rejected the government's argument that it could prove "the receipt of a personal benefit by the mere fact of a friendship, particularly of a casual or social nature." *Id.* at 452.  Instead, the government must prove that tippers received a benefit "objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature."  *Id*.

This revised definition of insider trading requires vacating Mr. Whitman's conviction.  *First*, considering all the evidence, the prosecution's arguments, and the jury instructions in this case under this new standard, there can be no doubt that the government's primary theory of guilt was that the alleged tippers were "furthering a friendship."  Because the verdict plainly did not rest solely on proof of a benefit to the tippers that was "objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature," it cannot stand.  Even if a rational jury, properly instructed, could have convicted Mr. Whitman on the basis of the evidence adduced at trial, the invalid theory was so pervasive in this case that it fatally infects Mr. Whitman's conviction.  *Second*, the indictment was deficient for failing to allege that Mr. Whitman was aware the tippers received an objective and consequential personal benefit under Newman.  *Third*, there are no jurisdictional, procedural, or prudential bars on hearing and resolving Mr. Whitman's motion.  *Fourth*, if the government contends that these claims are procedurally defaulted, then this Court must determine whether prior counsel was ineffective for failing to raise them.

In short, Mr. Whitman was indicted, convicted, and imprisoned based on a legal theory that the Second Circuit has now determined is legally invalid.  His conviction should be set aside.

I.    **THE COURT'S INSTRUCTION PERMITTED THE JURY TO CONVICT MR. WHITMAN ON A LEGAL THEORY THAT IS INVALID AFTER *NEWMAN***

The theory of guilt on which Mr. Whitman was convicted has been invalidated by *Newman*, and as a new substantive rule of law, *Newman* applies retroactively. Because the government repeatedly urged the jury to convict on the now-invalidated theory, the error cannot be deemed harmless. Mr. Whitman is therefore entitled to relief under 28 U.S.C. § 2255.

A.    ***Newman* Invalidated the Instruction Given at Trial**

Throughout the proceedings in this case, the parties disputed the meaning of the "personal benefit" requirement for insider trading prosecutions. Personal benefit to the tipper is an essential element of the offense. After all, the Supreme Court has long held that there is "no general duty between all participants in market transactions to forgo actions based on material, nonpublic information." *United States v. O'Hagan*, 521 U.S. 642, 661 (1997) (internal quotation marks omitted). Instead, knowingly receiving and trading on material nonpublic information from an insider is unlawful only if the insider breached his fiduciary duty to shareholders in order to obtain a "personal gain." *Dirks v. SEC*, 463 U.S. 646, 659 (1983). As this Court observed at trial, however, *Dirks* did little to shed light on precisely what constitutes a "personal benefit" sufficient to transform legitimate information seeking into criminal insider trading. (*See, e.g.*, Tr. 2345).

At Mr. Whitman's trial, the parties disagreed about what counts as a personal benefit, and they proposed dueling instructions. The government argued that maintaining a friendship could constitute a personal benefit. Mr. Whitman disagreed, and proposed that any benefit must "be expected to redound a pecuniary benefit eventually." (Tr. 2342-44).

This Court agreed with the government.  It rejected Mr. Whitman's proposed instruction and instead gave an instruction substantially similar to the government's proposal.  It thus instructed the jury as follows:

> As to the personal benefit that the insider . . . received or anticipated receiving . . . in return for disclosing inside information, the benefit does not need to be financial or tangible in nature.  It could include, for example, obtaining a useful networking contact, improving a witness' reputation or power within the company, obtaining future financial benefits or just maintaining or furthering a friendship.  But the government must show that the insider is disclosing inside information to an outsider for some personal reason, rather than a company approved purpose, and is obtaining some personal benefit, however modest.

(Tr. 2952).  Most importantly, the instruction stated that "just maintaining or furthering a friendship" can count as a sufficient personal benefit to trigger insider trading liability.

That language set a low bar for proving personal benefit, and not surprisingly, the government relied heavily on a friendship theory of personal benefit at trial.  That theory, however, has now been invalidated by the Second Circuit's intervening decision in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014).

In *Newman*, the Second Circuit reversed the convictions of two remote tippees.  It held that the government must prove not only that a remote tippee knew the insider had divulged confidential information, but *also* that the tippee knew the insider's disclosure had been made "in exchange for a personal benefit" that, at a minimum, was "objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature."  773 F.3d at 450, 452.  The *Newman* court expressly rejected the government's contention that evidence that the tippers and tippees had "known each other for years" or were "family friends" was "sufficient to prove that the tippers derived some benefit from the tip," holding that, "[i]f this was a 'benefit,' practically anything would qualify."  *Id.* at 452.  Elaborating on this holding, the Court explained

that "mere . . . friendship" between the insider and initial tippee, "particularly [where that friendship is] of a casual or social nature," is not the sort of "personal benefit" that can support insider trading liability. *Id.*[2]

Thus, under *Newman*, in order to sustain a charge of insider trading, the government must prove that a tipper must receive a personal benefit that is "objective" and "consequential" and has at least some possibility of pecuniary or tangible value. Under *Newman*, just maintaining a friendship does not count as a personal benefit. Prior to *Newman*, the law in this area may have been unsettled, but under *Newman*, the instruction given at Mr. Whitman's trial was erroneous.

## B.  *Newman* Applies Retroactively on Collateral Review

*Newman* was decided after Mr. Whitman's trial and appeal. But because it is a new rule regarding the substantive scope of criminal liability, *Newman* applies retroactively to Mr. Whitman's conviction.

In general, under the doctrine of *Teague v. Lane*, 489 U.S. 288 (1989), new rules of criminal procedure do not apply retroactively on collateral review. By contrast, new substantive rules do apply retroactively. A decision announcing a new substantive rule is one in which a court holds "that a substantive federal criminal statute does not reach certain conduct" or otherwise "decides the meaning of a criminal statute enacted by Congress." *Bousley v. United States*, 523 U.S. 614, 620 (1998). In other words, when a new decision demonstrates that the defendant may have been convicted for conduct that is not criminal, this "inherently results in a

---

[2] The *Newman* Court also reaffirmed the teachings of *Dirks* and prior Second Circuit precedent that the government can satisfy the personal benefit requirement if it proves, in the context of a "meaningfully close personal relationship," that "the tippee's trades 'resemble trading by the insider himself followed by a gift of the profits to the recipient.'" *Id.* at 452 (quoting *Dirks*, 463 U.S. at 664). The government never pursued such a gift theory in Mr. Whitman's trial and in any event, there was no evidence suggesting that the relationships between the tippers and immediate tippees was anything more than the sort of casual friendship that the *Newman* Court held was insufficient to satisfy the personal benefit element.

complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255." *Davis v. United States*, 417 U.S. 333, 346-47 (1974).

The Second Circuit's decision in *Newman* announced a new substantive rule of insider trading law. *Newman* held that it is not illegal for a tippee to trade on the basis of nonpublic information unless the tipper disclosed the information in exchange for an objective and consequential personal benefit and the tippee was aware of that benefit. 773 F.3d at 450-52. Because *Newman* clarified and narrowed the substantive insider trading law, it "necessarily carr[ies] a significant risk that [Whitman] stands convicted of 'an act that the law does not make criminal.'" *Bousley*, 523 U.S. at 620 (quoting *Davis*, 417 U.S. at 346). Accordingly, the Court must apply it on collateral review. *See Bilzerian v. United States*, 127 F.3d 237, 242 (2d Cir. 1997) (assessing jury instructions and the trial evidence under an intervening Second Circuit decision that "legalize[d] certain conduct previously thought to be criminal").

In sum, if it appears that a defendant "may have been punished for conduct that simply is not illegal," then relief under § 2255 is warranted. *United States v. Mandanici*, 205 F.3d 519, 525 (2d Cir. 2000) (internal quotation marks omitted). That is precisely what happened here.

## C. The Instructional Error Cannot be Deemed Harmless

The instruction given at trial—which stated that just maintaining a friendship constitutes a personal benefit—is erroneous under *Newman*. Because the government relied heavily on a friendship theory of personal benefit at trial, that instruction cannot be deemed harmless.[3]

---

[3] The precise standard of prejudice for this claim is unsettled under Second Circuit law. In general, an error raised on collateral review justifies relief if the error had a "substantial and injurious effect" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks omitted). However, it is an open question in this Circuit as to what is "the proper harmless error standard to apply when a constitutional error is being evaluated for the first time on collateral review," *Santana-Madera v. United States*, 260 F.3d 133, 140 (2d Cir. 2001). Some courts have held that on § 2255 review (as opposed to § 2254 review), if an error has not been previously addressed, then the more stringent standard of *Chapman v. California*, 386 U.S. 18 (1967), applies. *See, e.g., Monsanto v. United States*, 143 F. Supp. 2d 273, 283-86 (S.D.N.Y. 2001) (discussing circuit split), *aff'd* 348 F.3d 345 (2d Cir. 2003). Mr. Whitman submits that the analysis in *Monsanto* is correct, and the *Chapman* standard should be applied.

1.    *The Government's Friendship Theory*

From the pretrial proceedings through the trial and appeal, the government relied heavily on a friendship theory of personal benefit.  The strategic reason for choosing this theory is fairly obvious: the government did not have strong evidence that the tippers ever received pecuniary or other tangible benefit.  But whatever the reason, it is clear that the government's primary theory of impermissible benefit was one of "maintaining a friendship."

In opposing Mr. Whitman's motion to dismiss the Indictment on the grounds that it did not sufficiently allege an improper personal benefit, the government cited exclusively to cases holding that friendship is sufficient to establish the requisite personal benefit to the tipper himself.  (*See* Shapiro Decl. Ex.3 at 11).  In its opening statement, the government emphasized that friendship was both why and how the inside information had been shared.  For example, the government argued that Motey, the intermediary who obtained tips from his insiders at Marvell that he passed to Mr. Whitman, procured this information not with promises of pecuniary gain, but rather because he "had known these sources for a long time" and "used his relationships with them to get inside information."  (Tr. 11).  Similarly, the government told the jury that Mr. Whitman's alleged insider trading of Polycom stock was illegal because the "source had known Roomy Khan for years, and they were friends."  (Tr. 17).

Consistent with that narrative, when the government questioned its witnesses, it focused on the fact that the inside information came from "friends."  It used the same theory to establish Mr. Whitman's knowledge of benefit (even though in several instances, the record suggests that Mr. Whitman did not even know the names of the insider contacts).  For example, the government asked Motey what he "recall[ed] telling Mr. Whitman about the nature of [Motey's]

---

But in any event, this Court need not reach that question, because the error here was prejudicial under either standard.

relationship with any of [his inside sources at Marvell]," to which Motey replied that he "had

told him that I had friends and business associates at Marvell."  (Tr. 194; *see also* Tr. 643 (Motey

re-direct) ("Q. I think you testified that you played soccer with Mr. Miri?  A. Yes.  Q. Did Mr.

Whitman know that?  Did you ever tell that to him?  A. That was my recollection.")).  The

government put the same emphasis on Mr. Whitman's knowledge of friendship when it

questioned Khan with respect to Sunil Bhalla, her inside source at Polycom, asking what she told

"Mr. Whitman about [her] relationship with Mr. Bhalla," to which she replied "I had told Mr.

Doug Whitman that he was a good friend of mine."  (Tr. 1045).

Perhaps most significantly, when the government cross-examined Mr. Whitman himself,

it repeatedly emphasized his knowledge of social friendship between his sources and their

tippers.  First, the government asked if it was "true that Roomy Khan told you this contact was

her friend," and Mr. Whitman acknowledged that "she did."  (Tr. 2387-88).  Second, Mr.

Whitman was asked if he "knew that Sunil Bhalla and Roomy Khan were friends," and he

admitted knowing "they were . . . casual friends, yes."  (Tr. 2479).  Third, when asking about

Shammara Hussain, Roomy Khan's "source at this [investor relations] firm" working for Google,

the government asked Mr. Whitman if he "underst[oo]d they had a social relationship," to which

again he admitted that, although he did not "know how much of a social relationship, . . . [he]

understood at some point that they had a social relationship."  (Tr. 2479).  Finally, when

questioning whether Mr. Whitman "knew Karl Motey was friends with the people he received

information from at Marvell" (Tr. 2488), the government placed great emphasis on Mr.

Whitman's use of "the word friend" in instant messages describing the source (Tr. 2490).

The government also relied on this evidence of friendship as proof of a personal benefit

on several occasions in arguments to this Court.  In opposing Mr. Whitman's motion for a

judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, the government explicitly argued, "[i]n terms of the benefit, we've shown that Ms. Khan and Mr. Bhalla were friends." (Tr. 1831). Likewise, its argument with regard to Marvell and Motey was "the testimony was he's giving this information out . . . because they had a long-standing relationship; they had known each other for many years" (Tr. 1834), and when questioned by the Court about Mr. Whitman's knowledge of any personal benefit, the government responded, "[t]here is evidence that he knew there was a friendship between Motey and at least one of the Marvell contacts" (Tr. 1840).

The government pressed the friendship theory extensively in its proposed instructions and at the charge conference, specifically requesting that the Court instruct the jury that "friendship is sufficient" to prove an improper personal benefit. (Tr. 2342). When asked what evidence warranted that instruction, the government responded that "the facts established both that Roomy Khan and Sunil Bhalla were friends and that Whitman knew it" (Tr. 2342), and that "the benefit vis-à-vis Roomy Khan and Sunil Bhalla was a product of their friendship" (Tr. 2343-44).

In light of the way the government elicited evidence that Mr. Whitman knew of friendships between the insiders and Mr. Whitman's contacts and the charge to the jury that included friendship as an example of a personal benefit, it is wholly unsurprising that "friendship" was also a major theme of the government's closing arguments to the jury. When hypothesizing about Bhalla's motives in revealing confidential information, the government argued that "[h]e did it for his friend Roomy Khan." (Tr. 2813). When describing Motey's sources, the government reiterated that "Miri was a friend of his," that "Motey and Mr. Brennan had developed a relationship prior to this passage of confidential inside information" (Tr. 2820),

11

and that Mr. Whitman knew that this information came from "Karl's friend, his Marvell friend" (Tr. 2823).

Friendship was a refrain of the rebuttal as well.  The government repeated that Khan "is friends with Sunil Bhalla" and "is friends with Shammara Hussain."  (Tr. 2926).  Indeed, the government's very last argument to the jury reiterated this theme with metronomic consistency, reminding them that Mr. Whitman "knew about the relationship between Motey and Brennan and Motey and Miri," that "he knew about the relationship between Hussain and Khan," and that "he knew about the relationship between Bhalla and Khan."  (Tr. 2931).

In short, the government took every opportunity to invite the jury to base its conviction on the personal benefit of "just maintaining or furthering a friendship."  (Tr. 2952; *id.* ("the benefit does not need to be financial or tangible in nature")).  Even on appeal, when Mr. Whitman argued that the government did not prove a legally sufficient personal benefit, the government returned to its argument that "the disclosure of inside information to cultivate a relationship or benefit a friend is sufficient proof of a benefit."  (Shapiro Decl. Ex. 4 at 65).  The government's virtually unceasing reliance on the now-invalidated theory of maintaining a personal friendship as a personal benefit—with little mention of any "potential gain of a pecuniary or similarly valuable nature," *Newman*, 773 F.3d at 452—makes clear that the error affected the outcome at trial.  It cannot be deemed harmless.

### 2.     *Insufficiency and Alternate Grounds*

It is doubtful whether the government could have successfully prosecuted this case under the requirements of *Newman*.  However, for the purposes of this § 2255 motion, this Court need not make any finding of insufficiency.  It is enough to say that the jury instructions were deficient and that Mr. Whitman was prejudiced by the erroneous instructions.  Even assuming

*arguendo* that a properly instructed jury *could* have found him guilty, based on a finding of sufficient non-friendship benefit to the tippers, the jury at Mr. Whitman's trial was not required to make such a finding. At a minimum, he is therefore entitled to a new trial.

The government may well attempt to argue that the conviction may nonetheless be affirmed on alternate grounds. It may argue, in other words, that this Court can simply assume that the jury probably did find some personal benefit that would have qualified under *Newman*. That is not true. "A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (*per curiam*) (citing *Yates v. United States*, 354 U.S. 298 (1957)). In this case, in light of the arguments and evidence discussed above, it is abundantly clear that the jury relied on an invalid theory.

Recent cases decided after *Skilling v. United States*, 561 U.S. 358 (2010), are particularly instructive on this point. In *Skilling*, the Supreme Court narrowed the scope of "honest services" fraud as proscribed by 18 U.S.C. § 1346, ruling that "undisclosed self-dealing," 561 U.S. at 409, was not criminal unless it resulted in a tangible gain in the form of "bribes or kickbacks supplied by a third party," *id.* at 404. In the wake of *Skilling*, the Second Circuit clarified that convictions should be "reversed in cases tried before *Skilling* . . . where the Government intertwined an alternative theory with a bribery or kickback scheme theory." *United States v. Botti*, 711 F.3d 299, 311 (2d Cir. 2013); *see also United States v. Andrews*, 681 F.3d 509, 522 (3d Cir. 2012) ("[W]here evidence on the valid alternative theory is relatively weak, the government relies heavily on the improper theory, and the district court's instructions on the improper theory are 'interwoven' throughout the jury charge, the instructional error will not be harmless."); *United States v. Hornsby*, 666 F.3d 296, 306 (4th Cir. 2012) (vacating conviction where "the conflict-of-

interest theory was 'interwoven' throughout the district court's honest-services fraud instruction to the jury").

Adhering to this guidance, courts have vacated pre-*Skilling* convictions where the government's presentation of the evidence "made it possible, even if unlikely, that the jury . . . did convict purely on the basis of a now-invalid honest services fraud theory." *United States v. Post*, 950 F. Supp. 2d 519, 539 (S.D.N.Y. 2013). Vacatur of convictions based on this instructional error was required both in cases in which "[t]he Government made the honest services theory a central" part of its case, *Martignoni v. United States*, No. 10 Civ. 6671 (JFK), 2011 WL 4834217, at *10 (S.D.N.Y. Oct. 12, 2011), and in cases in which "though honest services fraud was not necessarily the Government's primary theory, it was given individualized attention explicitly in the Indictment, in the Government's opening and closing statements, and in the jury instructions," *Post*, 950 F. Supp. 2d at 534.

This is an even easier case. In this case, the problem was not simply that the now-invalid friendship theory was intertwined with a valid pecuniary benefit theory. Rather, in this case, the problem was that the invalid friendship theory was the government's primary theory of guilt at trial. The truth is that the government had to rely on a friendship theory of personal benefit in large part because it had, at best, only very scant evidence that Mr. Whitman knew the insiders had received any benefit of the type *Newman* requires. But even if a reasonable jury could have found that the tippers received a *Newman*-qualifying benefit, and that Mr. Whitman was aware of such a benefit, it cannot be plausibly maintained that the jury in this case actually did make such findings.

The instructions allowed the jury to convict on a friendship theory, and that was precisely the theory that the government pursued. The government cannot save this conviction by asking

this Court to make a new finding of guilt on an alternate ground. "Just as juries are presumed to follow the instructions they are given, they cannot be presumed to have found facts or elements of offenses they are *not* instructed to find." *Post*, 950 F. Supp. 2d at 533. The jury in this case was not required to find what *Newman* requires. Mr. Whitman is entitled to a new trial with a properly instructed jury.

## II. THE INDICTMENT WAS DEFICIENT BECAUSE IT FAILED TO ALLEGE AN ESSENTIAL ELEMENT OF THE OFFENSE

As argued above, the jury instructions at trial were deficient under *Newman*, and the government relied on an impermissible theory of guilt. The same error also fatally undermines the validity of the indictment. Indeed, the deficiencies in the indictment are in some ways even more obvious. The indictment did not allege, consistent with *Newman*, that the tippers received an objective and consequential benefit, or that Mr. Whitman was aware of such a benefit. Indeed, the indictment did not allege that Mr. Whitman was aware of any benefit whatsoever.

In addition to clarifying the meaning of "personal benefit," *Newman* clarified the requisite *mens rea* for an insider trading charge against a tippee. The Second Circuit held that the government must "prove beyond a reasonable doubt that [tippees] knew that the tippers received a personal benefit for their disclosure." 773 F.3d at 450-51. This conclusion was based in part on the fundamental principle that, as "a necessary element in every crime," the defendant must "know the facts that make his conduct illegal." *Id.* at 450 (citing *Staples v. United States*, 511 U.S. 600, 605 (1994)). As the Second Circuit noted, this requirement is "particularly appropriate" in this context, due to the somewhat murky nature of insider trading liability in indirect tippee cases. *Id.*

Knowledge of personal benefit is a fact necessary for conviction. Each element of an offense must not only be proved beyond a reasonable doubt, but must also be charged in the

indictment.  As the Supreme Court has repeatedly emphasized, any fact necessary for conviction "must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000) (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)).  Put differently, under the Grand Jury Clause, every element of a criminal offense must be found not only by a petit jury but also by a grand jury.  The Grand Jury Clause creates a procedural right.  Its purpose is in part to provide notice, but it also serves to ensure, as a procedural matter, that no defendant is held for trial unless the same "theory of guilt" is first "presented to the grand jury."  *United States v. Resendiz–Ponce*, 549 U.S. 102, 109-10 (2007).

The requisite *mens rea* was not presented to or found by the grand jury in this case.  The indictment alleged that Mr. Whitman knew that the information he obtained was disclosed by tippers "in violation of duties of trust and confidence."  (Indictment, ¶¶ 6, 18, 21).  It did not allege that Mr. Whitman knew the tippers obtained personal benefit, much less the sort of personal benefit contemplated by *Newman*.  The reason for this omission is obvious: at the time it drafted the indictment, the government's litigation position was that knowledge of benefit is not an element of the offense.  It consistently maintained that position in this case and in *Newman*.  But the Second Circuit has now squarely rejected the government's position.  In fact, the language of the indictment in this case tracks precisely the language of the jury instructions in *Newman*.  *See* 773 F.3d at 450.  The Second Circuit found those instructions legally deficient.  The indictment in this case was deficient for the very same reason.

Mr. Whitman raised this issue initially in a motion to dismiss the indictment.  (Shapiro Decl. Ex. 5).  This Court denied the motion.  It first noted that the existing case law was "unclear" as to "whether the tippee's knowledge of the tipper's personal benefit is a required essential element of the charge."  (Shapiro Decl. Ex. 6 at 3).  But it then concluded that even if it

16

was required, knowledge of breach necessarily implies knowledge of benefit, so only one need be alleged. This Court reasoned: "there would only have been a violation of the duty of trust and confidence if there had been the receipt of some personal benefit. So it seems to me that that language covers whatever the law requires . . . ." (*Id*.). This Court reasoned, in other words, that knowledge of benefit could be automatically inferred from knowledge of breach, so separate allegation and proof of the former was unnecessary. It subsequently reversed course to some extent, however, and required the jury at trial to find both knowledge of breach and knowledge of benefit.

But this Court's ruling at the pleading stage has now been invalidated by *Newman*. In *Newman*, the Second Circuit squarely rejected the government's contention that knowledge of breach is sufficient, and that knowledge of benefit can be automatically inferred from knowledge of breach. "[W]e find no support for the Government's contention that knowledge of a breach of the duty of confidentiality without knowledge of the personal benefit is sufficient." *Newman*, 773 F.3d at 448. Both are required. The requisite mens rea element is as follows: "the tippee knew of the tipper's breach, that is, he knew the information was confidential *and divulged for personal benefit*." *Id*. at 450 (emphasis added). As this Court stated, the tippee need not "know all the aspects" of the tipper's disclosure. (Shapiro Decl. Ex. 6 at 15). But the tippee must know all the aspects "that make his conduct illegal," and that includes objective and consequential personal benefit to the tipper. *Newman*, 773 F.3d at 450.

Only disclosures made for an objective and consequential benefit to the tipper are illegal. A remote tippee is not guilty unless he is aware that the tipper received such a benefit. Knowledge of breach is insufficient, and knowledge of a benefit such as friendship is also insufficient. As argued above, under the jury instructions given at trial, the government was not

required to prove the requisite *mens rea* to the petit jury. And as the text of the indictment itself makes clear, the government also did not present that element to the grand jury. The indictment was therefore deficient.

## III. THERE IS NO JURISDICTIONAL, PROCEDURAL, OR PRUDENTIAL REASON MR. WHITMAN'S MOTION CANNOT BE GRANTED IMMEDIATELY

There are no reasons why the Court should not promptly consider and grant Mr. Whitman's motion. This is Mr. Whitman's first motion pursuant to 28 U.S.C. § 2255, so he is not required to seek permission from the Court of Appeals under § 2255(h). The motion is timely filed, because it has been brought within one year of when Mr. Whitman's conviction became final upon the denial of his petition for writ of certiorari to the Supreme Court on November 10, 2014.

Mr. Whitman clearly preserved this argument during the prior proceedings. At trial, Mr. Whitman objected to the Court's charge, specifically arguing for the standard adopted in *Newman* that intangible benefits like friendship and reputation are only sufficient if they "can actually be expected to redound a pecuniary benefit eventually." (Tr. 2344; *see also* Shapiro Decl. 7 (Defendant's Proposed Jury Instructions) at 24 ("The benefit may be monetary or financial, or it could be intangible, such as a promise of future benefits. However, the benefit must be of some actual value to the insider, such that personal gain or advantage could have motivated the insider in making the disclosure of information.")). Mr. Whitman also made the same objection in the context of his Rule 29 motion, arguing that the government's proof of friendship was not a personal benefit "that qualifies sufficiently under *Dirks*." (Tr. 1837-38). Mr. Whitman reiterated these objections on appeal, arguing that the government's proof of friendship as a personal benefit conveyed to Motey's sources was not "in exchange for an actual 'personal gain'" (Shapiro Decl. Ex. 8 at 50 (quoting *Dirks*, 463 U.S. at 662)), and that proof that

18

Mr. Whitman knew of friendships between Khan and her sources did not constitute proof of a personal benefit either (*see, e.g.*, Shapiro Decl. Ex. 8 at 50 and n.15 ("Although he was aware that Khan had a friendly relationship with Bhalla and requested that she contact him for information about Polycom, the record did not show that Mr. Whitman knew at the time of any benefit provided to or anticipated by Bhalla.") (citations omitted)).

Finally, although the government has filed a petition for en banc review of the Second Circuit's decision in *Newman*, that petition provides no grounds to delay the resolution of Mr. Whitman's motion. Whatever the government's hopes may be, rehearing en banc "is not favored and ordinarily will not be ordered." Fed. R. App. Proc. 35(a). *Newman* became effective when the judgment issued concurrent with the opinion on December 10, 2014, *see* Fed. R. App. Proc. 41(c), and Mr. Whitman is entitled to its application without delay. Mr. Whitman has already served a substantial part of his sentence, and his family's life has been profoundly altered, for a conviction that *Newman* makes clear is fatally infected by an invalid legal theory advanced by the government at literally every stage of the proceedings.

## IV. WERE THE GOVERNMENT TO CONTEND THAT MR. WHITMAN'S PRIOR COUNSEL PROCEDURALLY DEFAULTED HIS *NEWMAN* CLAIM, THIS COURT NONETHELESS WOULD BE REQUIRED TO REACH THE MERITS OF THE CLAIM ON SIXTH AMENDMENT GROUNDS

Mr. Whitman has demonstrated the claims he raises here under *Newman* are based on new law. The government conceded as much in its pending Petition for Rehearing en banc in *Newman*. (Shapiro Decl. Ex. 9 at 3 (arguing that the holding in *Newman* constituted a "redefinition of the personal benefit requirement").) Nonetheless, even without the support of the *Newman* opinion, Mr. Whitman's prior counsel raised essentially the same claims both at trial and on direct appeal.

Thus, any claim by the government that Mr. Whitman's *Newman* claim was procedurally defaulted by prior counsel's failure to present it more fully in this Court or to raise it on direct appeal would be meritless. An assertion of procedural default on the part of prior counsel necessarily would rest on the premise that competent counsel should have raised further objections to this Court's proposed instructions, or requested additional instructions that anticipated the *Newman* holding. But trial counsel's failure to object to a jury instruction or request an additional instruction can be faulted only if the resulting jury charge contained "clear and previously identified errors." *Bloomer v. United States*, 162 F.3d 187, 193 (2d Cir. 1998); *accord Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001).

Prior to *Newman*, it certainly cannot be said it was "clear error" to fail to instruct that the government was required to prove that a remote tippee knew that a corporate insider had received a personal benefit that was "objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature," *i.e.*, something more than merely "maintaining or furthering a friendship." *Newman*, 773 F.3d at 450, 452. Whitman's prior counsel far exceeded what could reasonably be expected of them in terms of preserving the *Newman* issue for the purposes of this Court's decision in this collateral proceeding.

If, however, the government maintains that prior counsel could be reasonably expected to have more fully preserved Mr. Whitman's *Newman* claim, then it follows that they should have done so, and that failing on their part deprived their client of his Sixth Amendment right to the effective assistance of counsel. *Bloomer*, 162 F.3d at 193 (vacating denial of § 2255 motion based on counsel's failure to object to erroneous reasonable doubt instruction); *see also Cox v. Donnelly*, 387 F.3d 193, 199 (2d Cir. 2004) (affirming deficient-performance finding for counsel's failure to object to unconstitutional burden-shifting instruction). To be clear, Mr.

Whitman does not contend that the Court need decide his motion on Sixth Amendment grounds, or ought to do so. He simply maintains that a claim by the government of procedural default cannot prevent this Court from reviewing his motion on the merits.

## CONCLUSION

For the foregoing reasons, this Court should vacate Mr. Whitman's convictions on all counts.

Dated:  New York, New York  
       March 25, 2015

Respectfully submitted,

By:   s/ Alexandra A.E. Shapiro     
        Alexandra A.E. Shapiro

SHAPIRO ARATO LLP  
500 Fifth Avenue, 40th Floor  
New York, New York 10110  
Telephone:  (212) 257-4880  
Facsimile:  (212) 202-6417  
ashapiro@shapiroarato.com

Dennis P. Riordan *(pro hac vice)*  
RIORDAN & HORGAN  
523 Octavia Street  
San Francisco, CA 94102  
Telephone: (415) 431-3472  
Fax: (415) 552-2703  
dennis@riordan-horgan.com

Theodore Sampsell-Jones *(pro hac vice*  
    *pending)*  
WILLAM MITCHELL COLLEGE OF LAW  
875 Summit Ave.  
St. Paul, MN 55105  
Telephone:  (415) 846-5485  
ted.sampselljones@wmitchell.edu

*Attorneys for Douglas Whitman*